IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:05CV272-V-02
(5:03CR31-01-V)

```
JOSE DANIEL AMADOR-BELTRAN,    )
     Petitioner,               )
                               )
          v.                   )          O R D E R
                               )
UNITED STATES OF AMERICA,      )
     Respondent.               )
_____)
```

**THIS MATTER** is before the Court upon petitioner's "Motion to Vacate, Set Aside, or Correct" under 28 U.S.C. §2255," filed November 8, 2005. For the reasons stated herein, the petitioner's Motion to Vacate will be denied and dismissed for his failure to state a claim therein.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Pertinent to this Motion, the record reflects that on June 30, 2003, a vehicle driven by the petitioner and occupied by two other individuals was stopped for a routine traffic violation on Interstate 40 near Statesville, North Carolina. During the stop, the petitioner was given a verbal warning for having his Mexican license plate partially concealed by a tinted covering. However, after the officer issued the warning and advised the petitioner that he was free to go, he asked the petitioner for permission to search his vehicle. The petitioner gave his consent for the

search.

During the search, the officer discovered two hidden compartments in the rear wheel wells of the petitioner's vehicle. Inside of the two compartments, the officer found multiple packages of powder cocaine. At that point, the petitioner's vehicle was taken to the Iredell County Maintenance Garage where a more thorough search revealed a total of 16 ½ kilograms of cocaine.

Accordingly, on July 1, 2003, a Criminal Complaint was filed in this Court, charging the petitioner with conspiracy to possess with intent to distribute a quantity of cocaine; and charging him with the importation of five kilograms or more of cocaine, all in violation of 21 U.S. C. §§846 and 952, respectively. After that Complaint was filed, the petitioner was arrested and taken into federal custody.

On July 1, 2003, the Court conducted an initial appearance during which it granted the petitioner's requests for court-appointed counsel and for a Spanish-speaking interpreter. On July 2, 2003, counsel was appointed for the petitioner. However, on July 21, 2003, the petitioner retained Attorney Manuel Lopez of the California Bar as lead counsel in his case, and Mr. Lopez entered a general appearance for the petitioner.

Next, on July 29, 2003, the petitioner was indicted on charges of conspiracy to possess with intent to distribute more than five kilograms of powder cocaine, in violation of 21 U.S.C. §841(a)(1) (Count One); he was charged with possession with

intent to distribute more than five kilograms of powder cocaine, in violation of 21 U.S.C. §841 (Count Two); and he was charged with the importation of more than five kilograms of cocaine into the United States, in violation of 21 U.S. C. §§952 and 960(a) <u>et seq</u>. (Count Three).  After the petitioner was arraigned on the foregoing charges, his case was placed on the Court's trial calendar.

However, over the course of the 14-month period following his arraignment, the petitioner sought and obtained at least 8 continuances of his trial.  Then, on November 1, 2004, the petitioner, through Attorney Lopez, entered into a written Plea Agreement with the government.  By the terms of the parties' Agreement, the petitioner agreed to voluntarily plead guilty to the single charge of possession with intent to distribute cocaine as set forth in Count Two of the Indictment.  In exchange for the petitioner's promise, the government agreed to dismiss the remaining charges as the conclusion of the case.

Also by that Agreement, the petitioner was able to limit his exposure by stipulating that "the amount of cocaine that was known or reasonably foreseeable by [him] was at least 5 kilograms but less than 15 kilograms."  Such Agreement also stipulated that the corresponding base offense level was 32.  For its part, the government agreed to a three-point reduction in the petitioner's offense level for the petitioner's acceptance of responsibility for his criminal conduct.

Notably, in addition to those matters, the petitioner's Plea Agreement further pointed out his understanding that he was facing a statutory sentence of "no fewer than 10 years and no more than life imprisonment . . . ." The Agreement also noted the petitioner's understanding that "any [sentence] estimate from any source, including defense counsel, . . . [was] a prediction rather than a promise . . . ."

Moreover, the parties' Plea Agreement set forth the petitioner's warranty that he and counsel had discussed his appellate and collateral rights. In light of those discussions, however, such document further provided that the petitioner was waiving his right to directly appeal his conviction or sentence, and was waiving his right to collaterally challenge his conviction and/or sentence on any ground other than ineffective assistance of counsel, prosecutorial misconduct, or that his sentence was inconsistent with his stipulation regarding the amount of drugs which could be attributed to him or the initial calculation of the base offense level.

Accordingly, on November 2, 2004, the Court conducted a Plea & Rule 11 Proceeding in this matter. On that occasion, the petitioner appeared before the Court with his interpreter and both of his attorneys. After placing him under oath, the Court engaged the petitioner in a lengthy colloquy to ensure that his guilty plea was being intelligently and voluntarily tendered. In response to the Court's numerous questions, the petitioner swore,

4

inter alia, that he had fully discussed his case with his attorneys; and that he understood the charges and penalties which he was facing, particularly as they were explained in the Court and by his attorneys.

With particular relevance to the instant Motion, the petitioner further advised the Court that no one had threatened, intimidated, or forced him to enter his plea, and no one had made him any promises of leniency or a light sentence in order to induce his plea. On the contrary, the petitioner told the Court that he was tendering his plea because he, in fact, was guilty of the subject offense; and that he was satisfied with his attorneys services. Thus, after hearing the petitioner's answers to each of its questions, the Court accepted the petitioner's guilty plea.

On April 19, 2005, the petitioner, through his retained attorney, filed a Motion for a Downward Departure pursuant to the "safety valve" provision of the Guidelines set forth at U.S. Sentencing Guidelines §5C1.2. On the following day, the Court held the petitioner's Factual Basis and Sentencing Hearing. At the outset of that Hearing, the petitioner reiterated his stipulation to the existence of a factual basis for his guilty plea and conviction.

Next, the Court found that the petitioner's sentence had to be calculated in accordance with the recent U.S. Supreme Court ruling in United States v. Booker, 125 S.Ct. 738 (2005). The

Court then determined that the petitioner's Criminal History Category was I; that his total adjusted Offense Level was 27; and that the corresponding range of imprisonment was 70 to 87 months. The Court then denied the petitioner's request for a departure, but sentenced him to a term of 70-months imprisonment, that is, to a term which was below the 10-year statutory mandatory minimum to which he was exposed. In specific, the Court found that the Guidelines Sentencing range adequately addressed the purposes of the 18 U.S.C. §3553(a). The Court's Judgment in this matter was filed on May 18, 2005, and the petitioner did not appeal from that Judgment.

Rather, after waiting about six months, on November 8, 2005, the petitioner filed the instant Motion to Vacate. By this Motion, the petitioner asserts that he did not understand the nature of the charge an the consequences of his guilty plea; that his conviction was obtained in violation of his Fourth Amendment right to be free from unlawful searches and seizures; that his conviction somehow violates his rights under the Double Jeopardy Clause; and that his attorney was ineffective for having failed to argue that the petitioner should not have been charged with any offenses since he merely was the driver--and not the owner of the vehicle--in which the drugs were found.

The Court has carefully reviewed the petitioner's claims and determined that the subject Motion to Vacate must be summarily rejected. That is, even a cursory review of the record of this

matter shows that the petitioner's first three claims are procedurally barred for his failure to raise them on direct appeal, and also are foreclosed by his waiver as set forth in the parties' Plea Agreement.  Furthermore, the petitioner's remaining claim against counsel is baseless; therefore, this Motion will be dismissed.

## II. ANALYSIS

### 1. The petitioner's non-counsel related claims have been procedurally defaulted.

As has been noted, by his first through third claims, the petitioner is arguing that his guilty plea and conviction is invalid due to his alleged failure to understand the nature and consequences of his proceedings, and due to alleged violations of his Fourth and Fifth Amendment Rights.  However, as was further noted, the petitioner did not appeal his case, so that he could have raised those matters in the direct review context.

In United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), cert. denied, 529 U.S. 1010 (2000), the Court pointed out that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack."  Id., citing United States v. Frady, 456 U.S. 152 (1982); see also

Bousley v. United States, 523 U.S. 614, 621 (1998) (failure to challenge a matter on direct appeal, absent certain compelling circumstances, bars collateral review of same); and Stone v. Powell, 428 U.S. 465, 477 n.10 (1976).

Accordingly, inasmuch as the record reflects that the petitioner failed to appeal these three matters, and that he has failed even to offer a basis for excusing that procedural default, this Court lacks the authority to review the instant claims. Therefore, those matters must be summarily rejected.

2. **Even if the petitioner's first three claims were not procedurally defaulted, they still would be barred under the terms of his Plea Agreement**.

In addition to being procedurally defaulted, the record reflects that the petitioner's first three claims are barred due to the fully enforceable waiver which is set forth in his Plea Agreement.

To be sure, the Fourth Circuit has repeatedly approved the knowing and voluntary waiver of a defendant's rights to appeal and/or to collaterally challenge his conviction and sentence. See, e.g., United States v. General, 278 F.3d 389, 399-01 (4th Cir) (finding waiver "knowing and intelligent" based upon totality of the circumstances), cert. denied, 536 U.S. 950 (2002); United States v. Brown, 232 F.3d 399 (4th Cir. 2000); United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); and United States v. Davis, 954 F.2d 182, 185-86 (4th Cir. 1992).

To be effective, "the record must show that the waiver was

8

based on a knowing and intelligent decision." General, 278 F.3d at 400 (internal quotation omitted), quoting Davis, 954 F.2d at 186. In determining whether a waiver of appellate rights is "knowing and voluntary," and therefore effective, the Fourth Circuit applies a "totality of the circumstances" test to the facts. General, 278 F.3d at 400-01. To put it another way, whether a waiver of the right to appeal is knowing and intelligent depends on the facts and circumstances surrounding its making, including the defendant's background, experience and conduct. Davis, 954 F.2d at 186. Thus, a waiver can be effective even if the court does not question the defendant about it, so long as the other evidence in the record shows that the waiver was informed and voluntary. Id.

In the instant case, the petitioner, under the advice of two attorneys, executed a Plea Agreement by which he agreed to waive his right to collaterally challenge his convictions and sentences on the grounds which he has set forth in his first three claims. After execution of that Agreement, the petitioner appeared before the Court and answered numerous questions relating to that Agreement. During that proceeding, the petitioner swore that he had discussed numerous matters with his attorney, including the nature and consequences of his plea, the penalties he was then facing, and the provisions by which he was waiving his right to raise the challenges he is now attempting to raise.

Equally critically, there is nothing in the record to

9

support a finding, even in consideration of his language barrier, that the petitioner was incapable of understanding the terms of his Agreement.  Nor is there anything in the record to support a finding that the petitioner did not intend to waive his collateral rights under the provisions of that Agreement.

Thus, in a case such as this one, the law is settled that once the trial court conducts a Rule 11 colloquy--such as the one outlined above--and finds the plea to have been knowingly and voluntarily entered and the terms of the parties' agreement to have been understood and accepted by the parties, absent compelling reasons to the contrary, all of those matters are deemed to be conclusively established.  <u>Via v. Superintendent, Powhatan Correctional Center</u>, 643 F.2d 167 (4th Cir. 1981).  <u>Accord</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977) (defendant's plea and statements at Rule 11 proceedings "constitute a formidable barrier" to their subsequent attack).

Furthermore, based upon the foregoing matters, it is clear that the petitioner is not entitled to circumvent the consequences of his favorable Plea Agreement on the basis of his belated contention that he did not know that the charge to which he pled guilty would "give him so much time."  On the contrary, the petitioner has waived his right to now raise the subject claims which, in any event, he also has procedurally defaulted.

### 3. **The petitioner's claim against counsel also must be rejected**.

By his final claim, the petitioner alleges that counsel was ineffective for having failed to challenge his charges on the ground that he was not the record owner of the vehicle in which the drugs were found. However, inasmuch as actual ownership of the vehicle in which drugs are found is not essential to proof that the defendant possessed an item found therein, counsel could not possibly have been ineffective for failing to raise this matter. Indeed, in <u>United States v. Burgos</u>, 94 F.3d 849, 873 (4th Cir. 1996), the Fourth Circuit pointed out that to establish unlawful constructive possession of a controlled substance, the government need only prove that the defendant "exercised or had the power to exercise dominion and control over the drugs."

In the instant case, the petitioner was driving the vehicle in which the drugs were found. During a post-arrest interview by law enforcement officers, the petitioner advised that he had picked up the vehicle from its owner in Nogales, Mexico; that when he picked up the vehicle, he knew it had drugs in it; and that he, in fact, was hired to drive the vehicle with the drugs from Mexico to Greensboro, North Carolina, and was expecting to be paid for those services upon his delivery of the drugs. Other than these post-conviction general protestations of innocence, the petitioner has failed to specifically disavow this information, or to otherwise establish that he is not guilty of this

11

offense. Thus, the petitioner cannot demonstrate either deficient performance or prejudicial effect on the basis of this claim. See Strickland v. Washington, 466 U.S. 668, 687-91 (1984)(successful claim of ineffective assistance must demonstrate both deficient performance and prejudice to petitioner).

### III. CONCLUSION

In short, the petitioner has failed to state a claim upon which relief can be granted. Accordingly, the instant Motion to Vacate must be dismissed.

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: February 10, 2006

Richard L. Voorhees
Chief United States District Judge